

FILED
SEP 25 2020
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD EARL GADSDEN, CDCR # BJ-7048,<br><br>            Plaintiff,<br>v.<br>Deputy Sheriff J. Gehris and Deputy Sheriff M. McGrath,<br><br>            Defendants. | Case No.: 20cv0470-WQH (DEB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>[ECF No. 8] |

Plaintiff Ronald Earl Gadsden is proceeding *pro se* and *in forma pauperis* with a civil rights Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) He alleges that while incarcerated at the George Bailey Detention Facility ("GBDF") in San Diego, California, his First Amendment right to petition for the redress of his grievances was violated by his placement in disciplinary segregation for six days based on false charges in retaliation for complaining about missing a video visit with his girlfriend (claim one), and his Fourteenth Amendment right to due process was violated by the lack of notice and opportunity to be heard in the ensuing disciplinary proceedings (claim two). (*Id.* at 3-4.)

Currently pending before the Court is a Motion to Dismiss the Complaint by Defendants San Diego County Sheriff's Deputies J. Gehris and M. McGrath, the only remaining Defendants in this action. (ECF No. 8.) They contend the Complaint fails to

1

adequately allege they personally participated in or caused any constitutional violations, that Plaintiff's speech was chilled, that there was an absence of a legitimate correctional goal in the alleged retaliatory actions, or that the conditions in disciplinary segregation were significantly different than the conditions in general population necessary to create a liberty interest protected by due process. (*Id.* at 5-11.)

Plaintiff has filed an Opposition. (ECF No. 11.) He presents additional allegations of personal participation by the Defendants in the alleged constitutional violations, requests judicial notice of documents attached to the Opposition, and argues he has plausibly alleged constitutional violations. (*Id.* at 1-28.) Defendants reply that any factual allegations in the Opposition which are not contained in the Complaint are not properly before the Court on a motion to dismiss, object to Plaintiff's request for judicial notice on the ground he has not shown the documents attached to his Opposition contain facts which can be judicially noticed under the Federal Rules of Evidence, and argue the Opposition contains legal conclusions insufficient to support the claims. (ECF No. 12 at 1-4.)

For the following reasons, the Court **GRANTS** in part Defendants' Motion to Dismiss and **DISMISSES** Plaintiff's First Amendment claim against Defendant Gehris and Plaintiff's Fourteenth Amendment claim against both Defendants. The Court **DENIES** in part the Motion to Dismiss as to Plaintiff's First Amendment claim against Defendant McGrath. Plaintiff is **GRANTED** leave to file an amended complaint to cure the pleading defects identified in this Order, if he wishes to attempt to do so. If Plaintiff chooses not to amend his Complaint, this matter will proceed with the only remaining claim in the Complaint against the only remaining Defendant, a First Amendment retaliation claim against Defendant McGrath.[1]

---

[1] Although this matter was randomly referred to United States Magistrate Judge Daniel E. Butcher pursuant to 28 U.S.C. § 636(b)(1)(B), the Court has determined that neither a Report and Recommendation nor oral argument is necessary for the disposition of this matter. *See* S.D. Cal. Civ.L.R. 72.1(d).

## I. Procedural History

Plaintiff initiated this action by filing a *pro se* civil rights Complaint on March 12, 2020, pursuant to 42 U.S.C. § 1983, accompanied by an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (ECF Nos. 1-2.) He named as Defendants San Diego County, San Diego County Sheriff William Gore, and San Diego County Sheriff's Deputies O'Dell, Gehris and McGrath. (ECF No. 1.)

On May 5, 2020, the Court granted Plaintiff's *in forma pauperis* application. (ECF No. 3.) The Court at that time screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and found it failed to state a claim against Defendants Sheriff Gore, Deputy Sheriff O'Dell and the County of San Diego. (*Id.* at 3-12.) The Court found the Complaint survived screening as to a First Amendment retaliation claim against Defendants Gehris and McGrath alleging Plaintiff was falsely charged and placed in segregation in retaliation for complaining about missing a video visit, and a Fourteenth Amendment due process claim against those two Defendants alleging they failed to provide due process in connection to the ensuing disciplinary hearing. (*Id.*) The Court directed the United States Marshal to effect service of the summons and Complaint on Defendants Gehris and McGrath, the only remaining Defendants in this action. (*Id.* at 13.)

On July 16, 2020, Defendants Gehris and McGrath filed the instant Motion to Dismiss the Complaint. (ECF No. 8.) Plaintiff filed an Opposition on August 18, 2020 (ECF No. 11) and Defendants filed a reply on August 24, 2020. (ECF No. 12.)

## II. Allegations in the Complaint

Plaintiff alleges in claim one that on the evening of February 15, 2019, while housed at GBDF, he was awaiting a scheduled video visit with his girlfriend. (ECF No. 1 at 3.) Although all visits had been running on time that evening, he was not released from his cell for the visit. (*Id.*) He informed Defendant Deputy Sheriff Sergeant McGrath about the visit five minutes before its scheduled time and again three minutes past the scheduled time, but Defendant "McGrath did not comply." (*Id.*) Plaintiff waited another five minutes before informing Defendant McGrath for a third time he was scheduled for a video visit,

3

at which time Defendant McGrath told Plaintiff his visit had been cancelled. (*Id.*) Plaintiff states he learned from an acting trustee named William "that my visit had not been cancelled because your name was still on the kiosk meaning I still had time left to visit." (*Id.*) He instructed William to call Plaintiff's girlfriend, and as a result Plaintiff's girlfriend called the jail and complained on behalf of herself and Plaintiff. (*Id.*) Defendant McGrath immediately thereafter told Plaintiff: "Now your visit is really cancelled." (*Id.*) Plaintiff then asked Defendant McGrath for a complaint form. (*Id.*) Two hours later, Defendant McGrath asked Plaintiff if he still wanted a complaint form, and when Plaintiff said "yes," Defendant McGrath told Plaintiff to "roll up his property for transfer." (*Id.*) Plaintiff states he was taken to "the hold," referring to the Secure Housing Unit ("SHU"), "without ever being informed of the charges and found guilty of charges without even having a hearing." (*Id.*) He states he was in the SHU for six days in the same cell as a suicidal military veteran and was not permitted to shower although he requested one every day. (*Id.* at 3-5.)

Plaintiff alleges in claim two that on February 18, 2019, Defendant Deputy Sheriff Sergeant Gehris "falsified [a] disciplinary hearing without Plaintiff being present or [previously notified] of any hearing on the charges," at which he was found guilty of disrespect of staff, boisterous activity and interfering with jail operations. (*Id.* at 4.) He claims he was denied his rights to written notice of the charges 24 hours prior to appearing before a hearing officer, to call witnesses, and to be advised of the results at the time of the hearing. (*Id.*) He alleges that when he was released from the SHU on February 22, 2019, he was given a copy of the Sheriff's Department Incident Report, attached to the Complaint as Exhibit A, which he notes was not printed until February 19, 2019, and contends it was therefore impossible for him to have had notice of the February 18, 2019 disciplinary hearing. (*Id.*) He attaches as Exhibit B to the Complaint responses he received from the Internal Affairs Unit of the San Diego County Sheriff's Office and from the Claims and Investigation Division of the Office of the San Diego County Counsel to complaints he filed with those agencies about the lack of due process in the disciplinary proceedings. (*Id.* at 12-19.)

The Complaint alleges two claims: (1) a First Amendment claim against Defendants Gehris and McGrath based on allegations Plaintiff was placed in the SHU and subjected to disciplinary proceedings on false charges in retaliation for requesting a complaint form and having his girlfriend call and complain about missing their video visit, and (2) a Fourteenth Amendment due process claim against Defendants Gehris and McGrath based on allegations of the lack of due process in the disciplinary hearing. (ECF No. 3 at 6-7.)

### III. Defendants' Motion to Dismiss

Defendants move to dismiss both claims. (ECF No. 8.) They contend Plaintiff has not stated a Fourteenth Amendment due process claim because six days in disciplinary segregation is not a sufficient duration to create an atypical and significant hardship in relation to the ordinary incidents of his incarceration necessary to create a liberty interest protected by federal due process, and there are insufficient allegations of their personal participation in the alleged denial of due process in the disciplinary hearing. (*Id.* at 5-8.) They contend Plaintiff has not stated a First Amendment retaliation claim because there are insufficient allegations: (1) their alleged retaliatory actions caused the alleged due process violation, (2) of an absence of a legitimate correctional goal in their alleged retaliatory actions, (3) that Petitioner's speech was chilled, and (4) either Defendant personally participated in the alleged retaliatory conduct. (*Id.* at 8-11.)

Plaintiff presents additional allegations in his Opposition. He alleges there were two video consoles available on the evening of his scheduled video visit, one reserved for his visit with his girlfriend, and that Defendant McGrath allowed another inmate to use the other console for a visit that evening but not Plaintiff, showing "bias." (ECF No. 11 at 4-5.) He claims that Defendant "McGrath's goal was to punish and silence Gadsden, plus terrorize onlooking inmates by using greenwall scare tactics, and sending Plaintiff to disciplinary isolation for requesting an Internal Affairs complaint form." (*Id.* at 7.) Plaintiff alleges that while in the SHU he "was denied mail, shower and a disciplinary hearing" by Defendant Gehris, who also used "greenwall scare tactics in order to terrorize onlooking inmates and discourage both Plaintiff and witnesses from using Internal Affairs

5

complaint forms." (*Id.* at 7-8.) He contends he was ordered to be placed in disciplinary isolation but Defendant Gehris placed him in a cell with a suicidal military veteran to further intimidate him, which, along with his inability to shower and the lack of mail, created atypical and significant hardships compared to housing in the general population. (*Id.* at 8.)

Plaintiff attaches a request for judicial notice to his Opposition. (*Id.* at 10-27.) He requests judicial notice of Exhibit A, the same Sheriff's Department Incident Report attached to the Complaint as Exhibit A. (*Id.* at 10, 14-16.) It states he was charged with "Disrespect to Staff, Boisterous Activities and Interfering w/Jail Operations" based on the February 15, 2019 incident, which Defendant McGrath described in the report:

> At approximately 18:50 hours, I was logging a safety check and soft count started. The intercom was ringing from several video visits and inmates with questions. I answered the calls in the order they were received. The last call received was cell 241. As soon as the intercom was turned on, Inmate Gadsden demanded the cell door be opened. I responded with, "Excuse me?" he again demanded the door be opened, shouting "let me out now!"
>
> I explained to Gadsden if he has a video visit he needs to ask respectfully to be let out and to call me back when he can do so. Gadsden called back immediately and demanded his video visit again, stating I was not releasing him and I have done this to him three times. Gadsden continued shouting over the intercom, "Fuck this, I need an IA form."

(*Id.* at 15.)

The Incident Report concludes with a list of rights Plaintiff has with respect to the charges. (*Id.* at 15-16.) Plaintiff requests judicial notice of a notation on the incident report that it was printed on February 19, 2019 at 7:03 p.m., which he contends is the day after his disciplinary hearing was held. (*Id.* at 10.) Plaintiff requests judicial notice of Exhibit B, a United States Postal Service delivery confirmation form which he contends shows his Internal Affairs complaint was sent to the Internal Affairs Unit by his girlfriend on February 15, 2019, and Exhibit C, the process receipt and return forms used to effect service of the summons and Complaint on Defendants Gehris and McGrath. (*Id.* at 18-21.)

He contends without explanation that Exhibits B and C establish a causal connection between the Defendants and the alleged constitutional violations. (*Id.* at 6.) Finally, he seeks judicial notice of Exhibit D, a complaint he filed with the Internal Affairs Unit of the San Diego County Sheriff's Department alleging that his arrest which led to his incarceration at GBDF was based on racial profiling, which he contends in his Complaint here is "the basis for all of [the Defendants'] retaliatory and constitutional rights violations against" him. (*Id.* at 4, 23-27.)

Defendants reply that any factual allegations in the Opposition which are not contained in the Complaint are not properly before the Court on a motion to dismiss, and that the Opposition does not contain any legal citations but merely legal conclusions and threadbare recitals of the elements of the causes of action insufficient to withstand a motion to dismiss. (ECF No. 12 at 1-4.) Defendants object to Plaintiff's request for judicial notice on the ground he has not shown the documents contain facts which can be judicially noticed under Rule 201(b) of the Federal Rules of Evidence. (*Id.* at 2-3.)

**1. Legal Standards**

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The factual allegations must rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79.

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009), quoting *Iqbal*, 556 U.S. at 678.

### 2. First Amendment Retaliation Claim

Plaintiff claims his First Amendment right to petition for the redress of grievances was violated when Defendant McGrath: (1) cancelled his video visit in retaliation for his girlfriend calling and complaining that Defendant McGrath failed to ensure they were allowed their scheduled video visit, and (2) placed Plaintiff in the SHU on false charges in retaliation for asking for an Internal Affairs complaint form. (ECF No. 1 at 3.) Plaintiff states he was placed in the SHU on February 15, 2019 for six days without showering and in a cell with a suicidal inmate based on false charges of disrespect to staff, boisterous activity and interfering with jail operations. (*Id.* at 3-5.) He alleges Defendant Gehris "falsified [a] disciplinary hearing" on those charges on February 18, 2019, that he did not receive a copy of the Incident Report attached as Exhibit A to the Complaint until he was released from the SHU on February 21, 2019, and that he noticed the report had been printed on February 19, 2019, making it impossible for him to have been given notice of the hearing prior to it taking place on February 18, 2019. (*Id.* at 4.)

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559,

567-68 (9th Cir. 2005). The adverse action need not be an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *see also Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights.") The Complaint must allege a retaliatory motive, that is, a causal connection between the adverse action and the protected conduct. *Watison*, 668 F.3d at 1114-15.

Plaintiff has adequately alleged the first element because the filing of an inmate complaint is protected conduct. *Rhodes*, 408 F.3d at 568; *Watison*, 668 F.3d at 1114 ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.") He has also satisfied the second element, as he has alleged his placement in the SHU by Defendant McGrath and the subsequent allegedly "falsified" disciplinary hearing by Defendant Gehris constitute "adverse action." *See e.g. Stevenson v. Harmon*, No. 07-CV-1619 W (NLS), 2009 WL 10700432, at *4 (S.D. Cal. July 30, 2009) (noting that prison disciplinary proceedings constitute adverse action), *report and recommendation adopted*, No. 07-CV-1619 W (NLS), 2009 WL 10700476 (S.D. Cal. Aug. 25, 2009), *aff'd*, 399 F. App'x 274 (9th Cir. 2010).

Defendants do not contest those two elements, but first argue the Complaint does not adequately allege Plaintiff's First Amendment activity was chilled by Defendant's alleged actions. To satisfy this element, Plaintiff must allege facts from which a plausible inference could be drawn that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568-69 (internal quotation marks and emphasis omitted). Plaintiff has plausibly alleged that a person of ordinary firmness would feel a chilling effect from being placed in the SHU for six days with a suicidal cellmate and thereafter convicted of several false charges at a disciplinary hearing which did not take place, merely for requesting a complaint form. *See Watison*, 668 F.3d at 1114-16 (holding that allegations of placement in segregation on false disciplinary charge and lying to parole board would have chilled or silenced a person of ordinary firmness).

Defendants next contend the Complaint fails to plausibly allege the lack of a legitimate correctional goal in their alleged adverse actions. To satisfy this element of a retaliation claim, Plaintiff must allege "the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution." *Rizzo v. Dawson*, 778 F.2d 532, 532 (9th Cir. 1985); *see also Watison*, 668 F.3d at 1114-15. Assuming the allegations in the Complaint can be proven, that Plaintiff was placed in the SHU and falsely charged and convicted in a disciplinary hearing which never took place, all on the pretext of retaliating against him for asking for a complaint form, he plausibly alleges the absence of a legitimate correctional goal of placement in the SHU and the denial of due process in the disciplinary hearing. *See Watison*, 668 F.3d at 1115 (holding that allegations of false disciplinary proceedings initiated in retaliation were sufficient to allege the absence of a legitimate correctional goal); *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) ("When prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason.")

Defendants finally contend the Complaint contains insufficient allegations of a causal connection between their actions and the actions allegedly taken against Plaintiff. With respect to the causation element, because direct evidence of retaliatory intent is typically outside a plaintiff's personal knowledge and therefore can rarely be pleaded in a complaint, alleging "a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison*, 668 F.3d at 1114.

Plaintiff alleges that immediately after his girlfriend called GBDF and complained on behalf of herself and Plaintiff that they were not allowed to have their video visit, Defendant McGrath told him: "Now your visit is really cancelled." (ECF No. 1 at 3.) Plaintiff alleges he immediately asked Defendant McGrath for a complaint form, and two hours later, when Defendant McGrath asked Plaintiff if he still wanted a complaint form and Plaintiff said "yes," Defendant McGrath told him to "roll up his property for transfer." (*Id.*) With the addition of the allegation that he was placed in the SHU on false, pretextual charges, the allegation that Defendant McGrath acted with a retaliatory motive is facially

plausible because the Complaint pleads "a chronology of events from which retaliation can be inferred," it plausibly alleges that the adverse action (placement in the SHU on fabricated charges) was taken in retaliation for his protected activity (asking for a complaint form). *Watison*, 668 F.3d at 1114.

As to Defendant Gehris, however, there are no allegations in the Complaint that when he allegedly falsified a disciplinary hearing he was aware the charges against Plaintiff were false and a pretext for retaliation against him for asking Defendant McGrath for a complaint form. Although it may seem plausible to Plaintiff that the only reason Defendant Gehris would have "falsified [a] disciplinary hearing" on false charges brought by Defendant McGrath was because they shared a retaliatory motive, other than the timing of the events there are no *facts* alleged that Defendant Gehris acted with a retaliatory motive, and reliance on the timing of events is insufficient by itself to satisfy the causation element. *See Pratt*, 65 F.3d at 808 (holding that timing "can properly be considered as circumstantial evidence of retaliatory intent," but finding timing insufficient where there was "little else to support the inference" of retaliation.)

In his Opposition, Plaintiff presents allegations not contained in the Complaint that Defendant Gehris cooperated in and shared Defendant McGrath's goal to punish and silence him by using "greenwall scare tactics in order to terrorize onlooking inmates and discourage both Plaintiff and witnesses from using Internal Affairs complaint forms." (ECF No. 11 at 7-8.) He contends he was supposed to be placed in disciplinary isolation but Defendant Gehris placed him in a cell with a suicidal military veteran to further intimidate him, and that Defendant Gehris is responsible for Plaintiff not receiving mail or a shower while in the SHU. (*Id.*)

Any new allegations presented in opposition to a motion to dismiss are not properly before the Court. *See Schneider v. California Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") Nevertheless, the new allegation that

Defendant Gehris shared Defendant McGrath's retaliatory motive is vague and conclusory, in that it does not contain a factual basis as to how Plaintiff knows they shared that motive. "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The same is true with the new allegation that Defendant Gehris was the person who denied Plaintiff mail and showers while he was in the SHU. Without a factual basis for how Plaintiff knows these allegations are true they are insufficient to allege Defendant Gehris directly participated in the allegedly retaliatory conduct. *See Pratt*, 65 F.3d at 807-08 (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials were aware of an inmate's First Amendment activity and retaliated on that basis). The "mere possibility of misconduct" falls short of meeting the *Iqbal* plausibility standard. *Iqbal*, 556 U.S. at 679. There are no factual allegations in the Complaint which plausibly allege Defendant Gehris knew the charges were false and retaliatory, and the allegations in the Complaint are nonexistent with respect to whether Defendant Gehris acted with a retaliatory motive when he allegedly "falsified" the disciplinary hearing.

In sum, Plaintiff has plausibly alleged a First Amendment retaliation claim against Defendant McGrath, and the motion to dismiss that claim is **DENIED**. Plaintiff has failed to plausibly allege a First Amendment retaliation claim against Defendant Gehris, and the motion to dismiss that claim is **GRANTED**. Plaintiff is granted leave to amend to attempt to cure the pleading deficiencies with respect to his First Amendment retaliation claim against Defendant Gehris, or he may proceed only with his First Amendment retaliation claim against Defendant McGrath. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"), quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

### 3. Fourteenth Amendment Due Process Claim

Plaintiff claims in count two of the Complaint that on February 18, 2019, Defendant

Gehris "falsified [a] disciplinary hearing without Plaintiff being present or [previously notified] of any hearing on the charges." (ECF No. 1 at 4.) Plaintiff states that while he was in the SHU, without being informed that any charges were brought, he was found guilty of disrespect to staff, boisterous activity and interfering with jail operations. (*Id.*) He alleges that when he was released from the SHU on February 22, 2019, he was given a copy of the incident report, attached to the Complaint as Exhibit A, which he noticed was printed on February 19, 2019, making it impossible for him to have had notice of the charges or of the February 18, 2019 disciplinary hearing. (*Id.*) Plaintiff alleges he was not permitted to shower while he was in the SHU although he requested one every day and was placed in the same cell as a suicidal veteran. (*Id.* at 4-5.) He claims he was denied his rights in connection to the disciplinary hearing with respect to written notice of the charges at least 24 hours prior to appearing before a hearing officer, to call witnesses at the hearing, and to be advised of the results at the time of the hearing. (*Id.* at 4.)

The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000), quoting *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). A prisoner is entitled to certain due process protections when he is charged with a disciplinary violation. *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003), citing *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974). "Such protections include the rights to call witnesses, to present documentary evidence and to have a written statement by the fact-finder as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* at 1077-78; *see also Wolff*, 418 U.S. at 566 (explaining that an inmate must be afforded an opportunity "to call witnesses and

present documentary evidence in his or her defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.")

The Complaint adequately alleges Plaintiff did not receive the *Wolff* procedural protections. However, those protections "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected matter' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano*, 345 F.3d at 1078, quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The level of hardship necessary to show a liberty interest must be determined on a case-by-case basis, and "[i]n *Sandin*'s wake the Courts of Appeals have not reached consistent conclusions for identifying the baseline from which to measure what is atypical and significant in any particular prison system." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). "[T]he touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Id.*, quoting *Sandin*, 515 U.S. at 484. Due process protections also attach "where the State's action will inevitably affect the duration of [a] sentence." *Sandin*, 515 U.S. at 487.

Defendants first contend Plaintiff has failed to allege they personally participated in the alleged violation of due process. *See Iqbal*, 556 U.S. at 676 (noting that in a § 1983 action "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") Plaintiff plausibly alleges Defendant Gehris personally participated by holding the "fraudulent" disciplinary hearing, and Defendant McGrath personally participated by placing him in the SHU based on false charges in retaliation for asking for a complaint form.

Defendants next contend Plaintiff has not alleged the conditions in the SHU were any different than the general population, and that six days in segregation is insufficient to create a liberty interest. (ECF No. 8-1 at 5, citing *Sandin*, 515 U.S. at 485 (holding that placement in administrative segregation for thirty days did not impose an atypical and

significant hardship).) Plaintiff alleges in the Complaint he was housed in the SHU based on false charges for six days starting on February 15, 2019, with a suicidal cellmate, and during his stay he was not allowed a shower and was fraudulently convicted of disciplinary infractions. (ECF No. 1 at 3.) The allegation of the filing of false disciplinary charges by itself does not state a claim under 42 U.S.C. § 1983 because federal due process protections are contained in the ensuing disciplinary proceedings themselves. *See Atherley v. Kernan*, No. 3:19-cv-02355-LAB-KSC, 2020 WL 2079374, at *11 (S.D. Cal. Apr. 29, 2020). The duration of the stay is a factor to be considered. *See Sandin*, 515 U.S. 486-87 (holding that thirty days in administrative segregation did not impose an atypical and significant hardship). The duration here, six days, is not enough by itself, as district courts in California have found that administrative segregation stays of five days, of five months, and of nearly two years failed to allege atypical and significant hardships within the meaning of *Sandin*. *See e.g. Hernandez v. Constable*, No. 2:19-cv-2195 MCE DB P, 2020 WL 2145387, at *3 (E.D. Cal. Feb. 21, 2020) (collecting cases), *report and recommendation adopted*, No. 2:19-cv-2195 MCE DB P, 2020 WL 2126893 (E.D. Cal. May 5, 2020). As to the refusal of his requests to shower, Exhibit B attached to the Complaint, a July 15, 2019 letter from the Internal Affairs Unit of the San Diego County Sheriff's Department, states that Plaintiff was logged in as having refused a shower on February 19, 2019, and that on February 15, 16 and 20, 2019, he was offered laundry exchange.[2] (*Id.* at 13.) There are no facts alleged in the Complaint which plausibly allege a change in confinement that imposed an "atypical and significant hardship" on Plaintiff

---

[2] In deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his Complaint. *See* FED.R.CIV.P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), citing *Amfac Mortg. Corp. v. Arizona Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss).

such that the protections of *Wolff* apply.

The same is true even were the Court to consider Plaintiff's additional allegations in his Opposition, or his request for judicial notice, that the conditions in the SHU imposed an atypical and significant hardship on him in relation to the general population because he was ordered to be in security *isolation* but was housed with a mentally ill inmate and because his mail was not delivered. (ECF No. 11 at 8.) "Both the conditions and their duration must be considered, since exceptionally harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealer v. Giltner*, 197 F.3d 578, 586 (2nd Cir. 1999) (internal quote marks and citation omitted). Plaintiff has not alleged exceptionally harsh conditions in the SHU to plausibly infer that his short stay there subjected him to atypical and significant hardships.

Because Plaintiff has failed to allege that the six days he spent in the SHU exposed him to atypical and significant hardships in relation to the ordinary incedents of prison life, he has failed to plausibly allege a liberty interest protected by federal due process with respect to his placement in the SHU, and therefore his allegations of a failure to receive due process in the subsequent disciplinary proceedings does not state a claim upon which relief may be granted. The motion to dismiss Plaintiff's Fourteenth Amendment due process claim is **GRANTED** with respect to both Defendants Gehris and McGrath. As with the First Amendment claim, the dismissal is with leave to amend if Petitioner wishes to file an amended complaint.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **GRANTS** in part Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) with respect to Plaintiff's First Amendment retaliation claims against Defendant Gehris and Plaintiff's First Amendment retaliation claim against Defendants Gehris and McGrath. Those claims are **DISMISSED** with leave to amend. The Court **DENIES** Defendants' motion to dismiss Plaintiff's First Amendment retaliation claim against Defendant McGrath. Plaintiff is **GRANTED** leave to amend his Complaint within thirty (30) days from the date this Order is filed. If Plaintiff does not file a First

Amended Complaint, this action will proceed with the only remaining claim in the Complaint against the only remaining Defendant, Plaintiff's First Amendment claim against Defendant McGrath. If Plaintiff does not file an amended complaint, Defendant McGrath's Answer to the Complaint is due sixty (60) days from the date of this Order.

Any amended complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. Civ.L.R. 15.1; *Hal Roach Studios, Inc.*, 896 F.2d at 1546 ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "consider[ed] . . . waived if not repled.")

**IT IS SO ORDERED**.

Dated: 9/25/20

Hon. William Q. Hayes
United States District Judge